UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BASEER KHAN**,

 *Plaintiff*,

v.

**NATALIE A. BAKER**, *in her official capacity as Deputy Chief of Mission, U.S. Embassy in Pakistan, et. al.*,[1]

 *Defendants.*

Case No. 24-cr-271-RCL

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss Plaintiff Baseer Khan's petition for a writ of mandamus, which asks this Court to compel action on his visa application. For the following reasons, the Court will **GRANT** the defendants' motion to dismiss.

## I. BACKGROUND

Mr. Khan is a citizen of and resides in Pakistan working as a full-time medical doctor pursuing professional training in internal medicine. Compl. ¶ 2. In May 2023, Mr. Khan applied for a J1 visa to obtain entry into the United States because he was offered a job at Spalding Regional Hospital in the state of Georgia, requiring in-person attendance full-time. *Id*. ¶ 1–2. Mr. Khan paid all requisite fees and filed all appropriate forms in his visa application. *Id*. ¶ 13. He was interviewed at the United States Embassy in Pakistan in May 2023, and following the interview, Mr. Khan's application was put into "administrative processing." *Id*. ¶¶ 14–15. Mr. Khan has inquired into the status of his visa application and has not received any "meaningful

---

[1] The originally named defendants in this action were former Secretary of State Antony Blinken and former Deputy Chief of Mission (DCM) at the United States Embassy in Pakistan Andrew Schofer. In accordance with Fed. R. Civ. P. 25(d), the successors to those positions are "automatically substituted as a party." Those successors are Secretary of State Marco Rubio, and DCM at the United States Embassy in Pakistan Natalie A. Baker, respectively.

1

response," and the embassy in Pakistan has not published any information on expected processing time for the application. *Id*. at ¶ 16. Mr. Khan was able to defer his offer to work at Spalding General Hospital until 2024, but states that the offer will not be deferred for any additional time. *Id*. at ¶ 3.[2]

On January 30, 2024, Mr. Khan filed this action against former Secretary of State Antony Blinken and Deputy Chief of Mission ("DCM") of the United States Embassy in Pakistan Andrew Schofer (collectively, Defendants) to compel adjudication of his visa application. *Id*. ¶ 6. Mr. Khan seeks relief under the Declaratory Judgement Act, 28 U.S.C. § 2201, the Administrative Procedures Act, 5 U.S.C. § 701, and the Mandamus Act, 28 U.S.C. §§ 1331 and 1361. *Id*. On March 27, 2024, Defendants filed a Motion to Dismiss based on a lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, ECF No. 5. Mr. Khan filed his Opposition to the Motion to Dismiss on April 10, 2024. Opp'n, ECF No. 6. Defendants filed their reply on April 17, 2024. Reply, ECF No. 7. Defendants' Motion is now ripe for review.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "[A] court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate

---

[2] At the time of writing this Opinion, it is unclear whether Mr. Khan's job offer at Spalding Regional Hospital remains open.

whether or not it has jurisdiction to entertain a claim," including to "resolve factual disputes concerning jurisdiction." *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (Brown, Jackson, J.) (internal quotation marks and citations omitted).

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id*. (citation omitted).

### B. Unreasonable Delay

Mr. Khan's APA claim and mandamus claim rest on the theory that Defendants unreasonably delayed the adjudication of his visa. The APA commands that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 555(b), 706(1). A court evaluating a claim of unreasonable delay must "consider whether the agency's failure to respond is 'so egregious' as to warrant relief." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*

3

("*TRAC*"), 750 F.3d 70, 79 (D.C. Cir. 1984)). The D.C. Circuit has identified six factors for courts to consider when making this determination:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.3d at 80 (internal quotations and citations omitted). The standard for unreasonable delay under the Mandamus Act is "identical to the APA standard." *Tate*, 513 F. Supp. 3d at 148 n.7.

### III. DISCUSSION

Defendants raise five arguments for dismissal: (1) Mr. Khan has no standing because noncitizens residing abroad have no legally cognizable interest in a visa, and even if they did have a cognizable injury, the injury will not be alleviated by compelling re-adjudication; (2) Defendants have no continuing role and no authority to adjudicate the visa application at issue and thus there is no case or controversy in relation to those defendants;[3] (3) the Court lacks subject matter jurisdiction because Defendants are shielded by the doctrine of consular nonreviewability; (4) the Court lacks mandamus jurisdiction because Defendants do not have a non-discretionary duty to adjudicate visa applications; and (5) Mr. Khan fails to plead a plausible claim of unreasonable delay.

---

[3] The Court has switched the order of arguments (1) and (2) from how they were listed in the parties' briefs based on this Court's organization of the analysis.

The Court will grant Defendants' Motion to Dismiss based on argument (5)—that Mr. Khan has failed to plead a claim of unreasonable delay. As to argument (1), courts in this District have rejected the argument that noncitizens have no standing purely because they have no constitutional right to entry because, if the plaintiff alleges other legally cognizable harms such as financial hardship, they may have standing. *See Gundas v. Blinken*, No. 24-cv-1064 (RC), 2024 WL 5056375, at *4 (D.D.C. Dec. 10, 2024) (collecting cases). Regarding arguments (2) and (3), this Court has repeatedly rejected these arguments and will do so again here. *See, e.g.*, *Sharifymoghaddam v. Blinken*, No. 23-cv-1472-RCL, 2024 WL 939991, at *3–4 (D.D.C. Mar. 5, 2024) (Lamberth, J.); *Momeni v. Blinken*, No. 23-cv-3421-RCL, 2024 WL 4332604, at *4 (D.D.C. Sept. 27, 2024) (Lamberth, J.); *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) (Lamberth, J.).

However, Defendants still prevail overall. Regarding argument (4), even if Defendants are subject to a non-discretionary duty, argument (5) succeeds on the merits: under the *TRAC* factors, the alleged delay in processing Mr. Khan's visa is not unreasonable.

## A. Standing

### 1. Noncitizen Status

Defendants allege that Mr. Khan has no standing to compel action on his visa application because non-citizens that reside abroad "have no legally cognizable interest in a visa." Mot. to Dismiss 1. It is true that "non-resident aliens . . . have no 'constitutional right of entry into this country' the denial of which could constitute a concrete harm." *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 96 (D.D.C. 2024) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). But, a non-citizen plaintiff can still allege "cognizable downstream harms" from the delay in processing their visa applications. *Id.* Indeed, "[c]ourts in this district have consistently . . . conclud[ed]

that a plaintiff suffers an injury in fact when an unreasonable delay in visa adjudication causes financial or other hardship." *Ahmed v. Blinken*, No. 24-cv-153 (LLA), 2024 WL 4903771, at *3 (D.D.C. Nov. 27, 2024) (collecting cases). And here, Mr. Khan has alleged emotional, financial, and personal hardships that have stemmed from the delay in granting his application. Compl. ¶¶ 2–4.[4] Because Mr. Khan alleges injuries beyond just a delay in his admittance to the United States, he has stated a cognizable injury. And "[a]n order by this [C]ourt compelling adjudication of his visa . . . would remedy [his] injuries by freeing [him] from the interim 'processing' stage." *Ahmed*, 2024 WL 4903771, at *3. Therefore, Defendants' argument that Mr. Khan lacks standing as a non-citizen fails.

### 2. Redressability by Defendants

As this Court did in *Sharifymoghaddam* and *Momeni*, the Court will construe Defendants' argument that the Secretary of State has "no role" in adjudicating Mr. Khan's visa application as an Article III standing challenge, specifically targeting the requirement of redressability. *Sharifymoghaddam*, 2024 WL 939991, at *3; *Momeni*, 2024 WL 4332604, at *4. And again, the Court will reject that argument. Although "the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications 'within a reasonable time,' as the APA requires." *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023); *see also Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *3 (D.D.C. Aug. 8, 2024) ("[C]ontrol over visa determinations is distinguishable from control over

---

[4] Specifically, Mr. Khan has alleged emotional hardship in relation to his loss of opportunity to train at a United States hospital. Compl. ¶ 2. He has also alleged personal hardship because the delay has forced him to fall back a year in training from where he would be, had his visa application been handled more expeditiously. *Id.* ¶ 3. He has alleged financial hardship from the delay by having to pay for the necessary exams to qualify to train in the United States, but he has been unable to reap any reward for that effort due to the delay. *Id.* Mr. Khan has also been living on a meager salary in Pakistan and has been delayed from working in a much more lucrative job in the U.S. that would earn ten times his current salary. *Id.* ¶ 4.

the timing of visa determinations."). And the DCM of the U.S. Embassy in Pakistan is a proper defendant because the DCM "may enforce duties relating to visa adjudications because she appears to qualify as a 'commissioned consular officer[ ]' with authority over visa adjudications." *Nefedov v. Kuo*, No. 23-cv-3433 (TJK), 2024 WL 3400124, at *3 (D.D.C. July 11, 2024) (quoting 22 C.F.R. § 40.1(d)). Therefore, the current Secretary of State and current DCM of the U.S. Embassy in Pakistan are properly named as Defendants.

### B. Consular Nonreviewability

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing *Saavedra Bruno*, 197 F.3d at 1159). Courts in this Circuit, including this one on multiple occasions, have consistently held that when a visa application is still undergoing administrative processing, the State Department's decision is not final after initial refusal. *See Sharifymoghaddam*, 2024 WL 9399991 at *4; *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020); *see also Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 99 (D.D.C. 2020). In other words, "any [p]laintiff with an application in 'administrative processing' has not yet received a final decision," so it would not offend consular nonreviewability to order accelerated action on a pending application. *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287–288 (D.D.C. 2016).

The Court observes that the D.C. Circuit's unpublished decision in *Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), calls the reasoning in

7

those decisions into question. The *Karimova* panel held that once a consular official refuses a visa application, even if it is contemporaneously placed in administrative processing, the visa has been "officially refused" and the decision is considered final. *Id*. at *2. Here, as other courts in this District have done (and as this Court has done previously), the Court will not further analyze the impact of *Karimova* on the facts before it, because Defendants are entitled to dismissal in any event. *Momeni*, 2024 WL 4332604, at *4; *see also Motevali v. Blinken*, No. 23-cv-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024) (noting the potential impact of *Karimova* on consular nonreviewability of visa applications in administrative processing, but declining to explore the implications and dismissing on the merits of unreasonable delay).

### C. Unreasonable Delay

The Court concludes that Defendants are entitled to dismissal under Rule 12(b)(6) because Plaintiffs have failed to plausibly allege unreasonable delay of Mr. Khan's visa application. "Courts in this District have repeatedly held that it is appropriate to grant a motion to dismiss based on the application of the *TRAC* factors to the factual allegations of a complaint asserting a claim of unreasonable delay." *Momeni*, 2024 WL 4332604, at *4 (internal quotations and citations omitted).

The Court may, for the purposes of this analysis, assume that Mr. Khan has asserted the existence of "a discrete agency action that [the agency] is required to take" because in any event, he does not sufficiently allege unreasonable delay. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see also Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *6 & n.5 (D.D.C. Feb. 7, 2024) (assuming without deciding the existence of a "discrete, required duty" as a baseline for applying the *TRAC* factors to reject the allegation of unreasonable delay).[5]

---

[5] Again here, the Court is mindful of the D.C. Circuit's recent unpublished decision in *Karimova*, which casts doubt on whether consular officers are subject to a discrete, mandatory duty to timely complete administrative processing

Applying the *TRAC* factors to the allegations in the Complaint and judicially noticeable facts, this Court holds that Mr. Khan has failed to state a claim that the delayed adjudication of his application was unreasonable.

### 1. *TRAC* Factors One and Two

The first *TRAC* factor, which commands that the time agencies take to make decisions must be governed by a rule of reason, is the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The second *TRAC* factor "provides that the content of such a rule [of reason] may be found in a 'timetable or other indication . . . in the enabling statute.'" *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (quoting *TRAC*, 750 F.2d at 80). Put together, these factors "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale," and whether there is any "rhyme or reason" for the agency's delay. *Id.* Because the Immigration and Nationality Act does not prescribe any statutory timetable, courts "typically turn to case law as a guide" to determine the timeframe in which the State Department or consular official must adjudicate a pending visa application. *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Rahman v. Blinken*, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (quoting *Sawahreh*, 2022 WL 4365746, at *5).

Here, these first two TRAC factors favor defendants because Mr. Khan filed his visa application in May 2023 and had been waiting less than a year at the time of filing his opposition

---

after initial refusal. 2024 WL 3517852, at *3–4. But as this Court has already done in the wake of this opinion, and following a growing pattern from other courts in this District, the Court will dismiss Mr. Khan's claim based on his failure to allege unreasonable delay, without deciding whether *Karimova* independently requires dismissal. *Momeni*, 2024 WL 4332604, at *5 n.5 (collecting cases).

in this case. To date, he has been waiting less than two years, which is not unreasonable based on the weight of case law in this District.

### 2. *TRAC* Factor Four

The fourth *TRAC* factor, which asks the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority, weighs in Defendants' favor. "Where the agency action sought is one of many similar adjudications that the agency must complete, the court should be even more cautious before intervening." *Skalka v. Kelly*, 246 F. Supp. 3d. 147, 153 (D.D.C. 2017). This factor has been characterized as one that "often . . . carries the greatest weight." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022) (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023).

This factor favors Defendants because granting Mr. Khan's "requested relief would simply move them ahead in the processing queue to the detriment of other similarly situated visa applicants." *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021), *appeal dismissed*, No. 21-5079, 2021 WL 3083431 (D.C. Cir. July 14, 2021).

### 3. *TRAC* Factors Three and Five

"The third and fifth factors are often considered together, and require the Court to consider plaintiffs' interests, health, and welfare." *Chowdhury*, 2022 WL 136795, at *4 (alteration brackets omitted) (quoting *Thakker*, 2021 WL 1092269, at *7). Mr. Khan alleges that he has "invested years and thousands of dollars" to pass U.S. medical examinations and secure this position in a U.S. hospital training program. Compl. ¶ 3. As a result of the delay in processing his visa, he "risks losing his dream training opportunity at a premier program." *Id.*

10

And in the meantime, his current job in Pakistan only earns him $300 monthly, forcing him to live paycheck-to-paycheck. *Id.* ¶ 4.

While the Court sympathizes with Mr. Khan, his circumstances "are not unique enough to warrant ordering the Secretary to expedite processing at the expense of other applicants who also seek educational and work opportunities." *Yaghoubnezhad*, 734 F. Supp. 3d at 106. Of course, the court "does not mean to diminish the stress and anxiety [Mr. Khan] . . . must be experiencing during this time of uncertainty. But [his] situation is not dissimilar to others." *Xiaoda Liu v. Mayorkas*, 548 F. Supp. 3d 1, 5 (D.D.C. 2021). "At most," this factor weighs "slightly" in favor of Mr. Khan. *See Yaghoubnezhad*, 734 F. Supp. 3d at 106.

### 4. *TRAC* Factor Six

The last *TRAC* factor asks whether the agency has acted in bad faith. *Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023). The Circuit has cautioned that a finding of bad faith or impropriety is not necessary to hold that an agency action is unreasonably delayed. *TRAC*, 750 F.2d at 80. Here, while the Court sympathizes with Mr. Khan, the agency's delay does not appear "intentional" or to be "the result of any impropriety." *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022).

Overall, TRAC factors 1, 2, and 4 weigh in Defendants' favor; TRAC factors 3 and 5 weigh in Mr. Khan's favor; and TRAC factor 6 is at best neutral for Mr. Khan. As noted above, factors 1, 2, and 4 carry the most weight, and here, factors 3 and 5 are insufficient to overcome the factors that favor the defense. On balance, this Court finds that Mr. Khan has not stated a claim for unreasonable delay of his visa application under the APA, and Defendants' 12(b)(6) motion to dismiss will be granted.

## V. Conclusion

As is consistent with the many decisions in this District operating in the landscape of tremendous backlogs in visa processing, this Court is unable to provide Mr. Khan's requested relief. For the foregoing reasons, the Court will **GRANT** the defendants' motion to dismiss. A separate Order consistent with this Memorandum Opinion shall issue.

Date: March  31 , 2025

                                                                            Royce C. Lamberth
                                                                            United States District Judge